UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                              Chapter 11

**TGP COMMUNICATIONS, LLC**                       Case No.  24-13938-MAM

     **Debtor.**
_____/

**DEBTOR'S RESPONSE IN OPPOSITION TO
MOTION OF RUBY FREEMAN AND WANDREA' ARSHAYE MOSS FOR AN ORDER
DISMISSING THE DEBTOR'S CHAPTER 11 CASE UNDER SECTIONS 1112(B)
AND 305(A) OF THE BANKRUPTCY CODE OR, IN THE ALTERNATIVE,
MODIFYING THE AUTOMATIC STAY TO CONTINUE PREPETITION LITIGATION**

     **TGP COMMUNICATIONS, LLC** (the "**Debtor**") responds in opposition to the Motion of Ruby Freeman and Wandrea' Arshaye Moss for an Order Dismissing the Debtor's Chapter 11 Case Under Sections 1112(b) and 305(a) of the Bankruptcy Code or, in the Alternative, Modifying the Automatic Stay to Continue Prepetition Litigation [ECF No. 39] (the "**Dismissal Motion**"), as joined by Eric Coomer (ECF No. 57).

### INTRODUCTION

     The Litigation Creditors[1] seek dismissal of the Debtor's Chapter 11 Case based upon the assertion that the filing was made in bad faith (or lack of good faith). Although not expressly mentioned in Section 1112(b), *bad faith* has been recognized as a basis for dismissal of bankruptcy cases.

     The finding of good faith in the bankruptcy filing is guided by a judicial determination that the petition was filed with a valid bankruptcy purpose.  The valid bankruptcy purpose is guided by

---

[1] The Litigation Creditors includes Ruby Freeman and Wandrea' Arshaye Moss as Plaintiff in the Georgia Litigation and Eric Coomer as Plaintiff in the Colorado Litigation.

an intent (i) of "preserving going concerns"; and (ii) of "maximizing property available to satisfy creditors".[2] In this instance, the legitimate motivation by the Debtor to serve a valid bankruptcy function is demonstrably existent in this bankruptcy filing. That is, the Debtor has the availability to make substantial payments to all creditors over a defined time period and the timing of the filing was intended to maximize funds available to satisfy those creditors. Additionally, absent an opportunity to present a feasible plan that complies with the Bankruptcy Code, the outstanding state court litigation will certainly result in the total destruction of the Debtor and any going concern value that may be the source of payment to all creditors.

## BACKGROUND

1. The Debtor is a limited liability corporation incorporated in Missouri in 2013. At that time, its principal and sole shareholder, James Hoft ("**Mr. Hoft**") was a resident of St. Louis, Missouri. Mr. Hoft is the principal publisher, editor and philosophical leader for the Debtor's operations and publication on its opinion website known as The Gateway Pundit.

2. The Gateway Pundit is a blog/website devoted to the publication of conservative opinion and other newsworthy information at www.thegatewaypundit.com.

3. Shortly after the 2020 national election, the Debtor published and proclaimed opinion and information concerning voter fraud and other acts of election interference arising from the election of Joe Biden as the 46th President.

4. Among the information published in opinion and editorial content, was the allegations concerning Ruby Freeman and Wandrea Arshaye Moss (the "**Freeman Plaintiffs**"). These allegations were independently echoed throughout many right-wing conservative outlets

---

[2] *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 437, 119 S. Ct. 1411, 1414, 143 L. Ed. 2d 607 (1999); accord *Toibb v. Radloff*, 501 U.S. 157, 163, 115 L. Ed. 2d 145, 111 S. Ct. 2197 (1991).

and were derived from and restated by former President, Donald Trump and former New York Mayor, Rudy Giuliani.

5.  On December 2, 2021, the Freeman Plaintiffs initiated litigation (the "**Missouri Litigation**") against the Debtor in the St. Louis Missouri Circuit Court. The Missouri Litigation seeks damages against the Debtor and others for defamation and intentional infliction of emotional distress.

6.  On December 22, 2020, Eric Coomer ("**Mr. Coomer**") filed his lawsuit against the Debtor in the Second Judicial District in Denver County, Colorado. (the "**Colorado Litigation**") Mr. Coomer is a resident of Colorado and was the Director of Security for Dominion Voting Systems. The Colorado Litigation also asserts claims against the Debtor for defamation intentional infliction of emotional distress and civil conspiracy.

## ARGUMENT

### Dismissal: The Phoenix Piccadilly Factors

The Dismissal Motion cites *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir. 1988) as the primary source for its analysis of the Debtors *bad faith* filing. Of course, *Phoenix Piccadilly* presents a specific factual situation that customarily arises on the eve of a foreclosure proceeding on developed or undeveloped real estate as the sole asset of the Debtor. Generally, the cast of characters includes the Debtor/developer on one hand and the secured creditor(s) on the other hand. This line of cases are generally two-party disputes (debtor v. secured creditor), involves very few unsecured creditors and is filed solely to stall or delay the foreclosure proceedings in the speculation that an angel investor will appear to save the day. Many of the circumstantial factors which are identified by the *Phoenix Piccadilly* Court in support of a finding of bad faith are

specifically tailored to single asset real estate cases.[3] Thus, the factors identified in the Dismissal Motion do not truly fit within the framework of this case. Further, Courts in this district have rejected the formulaic application of a checklist to the determination of bad faith.[4] Especially when the rights of an unpaid **secured creditor** is not at issue.[5]

A.   **Piccadilly Factor 1: Number of Assets**

As indicated, this element is more aptly suited for single asset real estate cases. The Litigation Creditors cite to *In re Cambec Investment Corp* 349 B.R. 915 (Bankr. M. D. Fla 2006) The *Cambec* case is another single asset real estate bankruptcy that arose from the filing of a foreclosure action by the secured creditor. The Litigation Creditors argue that the "number of assets" owned by the Debtor is a circumstance that should contribute to a conclusion of bad faith.

However, this Debtor is not a real estate company, and its business purpose is not driven by an asset portfolio. Rather, this Debtor is an operating business deriving advertising revenue from legitimate sources. The Debtor's business operation is virtual in nature. That is, the Debtor has no need for a physical office to house multiple employees in order to operate its website. The "number of assets" factor is truly geared to the single asset real estate cases given the very nature of that type of business.  Especially since the *Phoenix Piccadilly* analysis is tailored for the

---

[3] *State St. Houses, Inc. v. N.Y. State Urban Dev. Corp.* (In re State St. Houses, Inc.), 356 F.3d 1345, 1347 (11th Cir. 2004)(the *Phoenix Piccadilly* factors are appropriate guidelines for consideration when evaluating whether a Chapter 11 petition in a single asset real estate case was filed in bad faith); *In re Clinton Fields, Inc.*, 168 B.R. 265, 268 (Bankr. M.D. Ga. 1994)(In the context of a single asset real estate Chapter 11 case, the Eleventh Circuit has enunciated the following [phoenix-piccadilly factors] as evidence of a debtor's bad faith); *In re Victoria Ltd. P'ship*, 187 B.R. 54, 59 (Bankr. D. Mass. 1995)(Stripped of much of its window dressing, *Phoenix Piccadilly* stands for the startling proposition that it is an act of bad faith for a debtor to file under chapter 11 in order to prevent foreclosure upon its only asset)

[4] See, *In re Balboa St. Beach Club, Inc.*, 319 B.R. 736 (Bankr. S.D. Fla. 2005)

[5]  319 B.R. at 742

SINGLE ASSET real estate case.[6] Thus, Piccadilly Factor 1 is not an adequate metric of good/bad faith for purposes of this case and otherwise fails to demonstrate bad faith.

### B.     Piccadilly Factor 2: Number and Nature of Unsecured Creditors

In *Phoenix Piccadilly,* as well as other single asset real estate cases, there are very few low-dollar unsecured creditors, and one or more secured creditor(s) holding high-dollar claims. Thus, the analysis of *quantity* of unsecured creditors is significant in the real estate cases. That is, in developer cases, the unsecured creditors are traditionally smaller in number and amount in comparison to the secured creditor holding multi-million dollar secured debt. In this case, however, both the Freeman Creditors and Mr. Coomer are unsecured creditors themselves. The Litigation Creditors seem to metamorphose unsecured creditors *in litigation* with the position of the secured creditor in real estate cases. There are no secured creditors in this case. Either the Piccadilly Factor 2 is inapplicable to this situation; or, the existence of the Freeman Creditors and Mr. Coomer militates against dismissal as they are themselves unsecured creditors.

### C.     Piccadilly Factor 3: Number of Employees

In support of this Factor, the Litigation Creditors rely upon a Southern District of Florida bankruptcy case that was filed by an owner of a fishing boat that was subject to foreclosure.[7] The Bankruptcy Court determined that the case was a bad faith filing, and stated: [8]

> [W]hen a debtor files a bankruptcy petition as a result of a two-party dispute for the sole purpose of gaining an advantage in a foreclosure action by avoiding the posting of a bond in order to regain possession of an arrested vessel, the debtor has filed in bad faith.

---

[6] See, fn. 3, *infra*

[7] In re Outta Control Sportfishing, 642 B.R. 180 (Bankr. S.D. Fla. 2022)

[8] 642 B.R. at 181.

The Bankruptcy Court did not rely upon the "number of employees" factor for its determination of bad faith. Media entities frequently utilize freelance writers on an independent contractor basis. Based upon the nature of its business, the Debtor has chosen to utilize this model of labor for its operation. That is, 30+ writers committed to the opinion website and are paid on a contract basis based upon the content and the popularity of the writing submitted by the writer. This less-common form of business and compensation justifies and explains the reasons for "few employees", though the writers are committed and serve the analytical purpose of Factor 3, albeit as independent contractors.

D.     **Piccadilly Factor 5: Nature of the Disputes**

Both the Colorado Litigation and the Missouri Litigation may be characterized as *destroy-the-company* litigation. That is, the two lawsuits appear to be intended to run the Debtor out of business rather than to obtain compensation. The Missouri creditors have already received hundreds of thousands of dollars in a settlement with One America News Network and were awarded nearly $150 million against Rudolph Giuliani for the same damages they claim Debtor caused. The Debtor is presently insured by a media liability policy (the "**Policy**") with approximately $1.3 million dollars remaining as the available Policy proceeds.[9] The two existing litigations will consume the entirety of the Policy prior to trial of either of the two cases. In that event, the Debtor will end up in a default position making it vulnerable to liquidation. The Litigation Creditors seem to have unlimited resources to pursue the litigations, receiving politically-driven donations for the cause. The Debtor does not. This kind of litigation is not

---

[9] The media liability Policy is a wasting policy. A "wasting policy" is one in which the limits of liability for a settlement or judgment are reduced by the amount of legal costs and expenses incurred during the course of the defense.

unusual in lower trial courts. However, this Court is concerned with factors other than settling vendettas or political dominance. This Court is intended to balance the survival of an operating business with and against payment to creditors. The Debtor is prepared to address the Litigation Creditors' claims through a confirmed plan which should result in a larger repayment than a dissolved and asset-less company. The bankruptcy statutes are designed and executed in such a manner as to allow a going concern to share its prospects of future productivity to allow for payment to creditors that exceed fire sale liquidation. If the Litigation Creditors truly seek compensatory payments, the confirmation of a reorganization plan in this Court is their best course.

E.  **Piccadilly Factor 6: Intent to Frustrate Legitimate Efforts of Creditors to Reorganize**

This factor is cited by the Creditors to criticize the *timing* of the filing of the Bankruptcy Case. According to the Dismissal Motion, an intense period of discovery was commencing which would utilize substantial resources from the Debtor's insurance Policy. It's the Debtor's belief that the remaining $1.3 million dollar value of the Policy is better deployed in a settlement/plan context rather than being used up by insurance-paid lawyers leaving the Debtor destitute upon depletion. Thus, the Debtor has acted responsibly and in good faith to preserve any additional resource to be brought to bear upon a plan of reorganization. No other impending event or discovery was contemplated in the timing of the bankruptcy. Had the Debtor waited an additional 3 to 6 months for a potential filing, the Policy proceeds would have been nil and there would be no additional contribution to a potential settlement or reorganization.

## Abstention/Stay Relief

For the same reasons argued above, this Court should deny the additional relief of abstention and/or relief from stay to allow the matters to return to State Court. "[I]n determining

whether cause exists to lift the stay, courts look to the totality of the circumstances."[10] That is, the prospects of reorganization and contribution of additional funds from the insurance Policy are better suited to be deployed in a bankruptcy case where all parties remain in the same forum and will receive equal treatment. Certainly, two separate litigations in two separate forums all funded by a single insurance policy will result in full depletion of defense funds, dissolution of the company and little to no payment to creditors. Abstention would have a detrimental effect on the administration of the estate. [11]

Relief from stay would be similarly detrimental. One of the laudable benefits of bankruptcy is to consolidate disparate claims into a single forum for equality of treatment and distribution. In this case, whichever one of the two pending litigations that reaches trial first will likely have depleted the Policy and will get first shot at the remaining assets of the Debtor. The second place litigation will be left with nothing but a pyrrhic victory. If the Litigation Creditors are dead set on depletion of the insurance policy, destruction of the Debtors business operations and zero payment on account of their claims, then such a result will certainly occur in a dismissal or stay relief.

In light of the foregoing, the Dismissal Motion should be denied in its entirety.

---

[10] *State Farm Fla. Ins. Co. v. Carapella (In re Gaime)*, 17 F.4th 1349, 1355 (11th Cir. 2021).
[11] *Compare Tidewater Lodging Grp., Ltd. Liab. Co. v. Kolter Cmtys. Mgmt., Ltd. Liab. Co.* (*In re Tidewater Lodging Grp., Ltd. Liab. Co.*), Nos. 08-25694-BKC-RBR, 09-01053, 2009 Bankr. LEXIS 926, at *7 (Bankr. S.D. Fla. Apr. 3, 2009).

**Dated: June 20, 2024**

                                            Respectfully submitted,

                        By:    /s/ Bart A. Houston
                                Bart A. Houston
                                Florida Bar No. 623636
                                **HOUSTON RODERMAN**
                                *Counsel for Debtor*
                                633 S. Andrews Ave. Suite 500
                                Ft. Lauderdale, Florida 33301
                                Telephone: (954) 900-2615
                                Facsimile: (954) 839-9068
                                Primary Email: bhouston@houstonroderman.com
                                Secondary Email: dschena@houstonroderman.com

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that a true and correct copy of the foregoing document was served by the CM/ECF Noticing System on all counsel or parties of record who are registered on the CM/ECF Noticing System on June 20, 2024.

                        By:    /s/ Bart A. Houston
                                Bart A. Houston
                                Florida Bar No. 623636