# Exhibit 5

MISSOURI CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT
(City of St. Louis)



FILED
JUL 2 4 2023
22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY _____ DEPUTY

RUBY FREEMAN, et al., )
)
    Plaintiffs, )
) Case No. 2122-CC09815
v. )
) Division 6
JAMES HOFT, et al., )
)
    Defendants. )

## ORDER AND JUDGMENT

The Court has the following before it: Plaintiffs' Motion to Dismiss Defendants' Improper Counterclaim Pursuant to Rule 55.27(a)(11) and Rule 55.27(a)(6); and Plaintiffs' Motion to Strike Defendants' Anti-SLAPP Motion made under GA Code §9-11-11.1. The Motions were heard on July 13, 2023, where the parties appeared by counsel. The Court has reviewed the submissions of the parties, the relevant authorities, and the arguments of counsel, and now rules as follows.

Plaintiffs Ruby Freeman and Wandrea Moss brought this case alleging that Defendants James Hoft, Joseph Hoft, and TGP Communications, LLC, d/b/a the Gateway Pundit are liable for defamation and intentional infliction of emotional distress for "knowingly and repeatedly published false accusations that Plaintiffs committed election fraud during the 2020 presidential election."



ENTERED
JUL 2 4 2023
MAM

Defendants filed a counterclaim alleging that Plaintiffs, their counsel, and the entities for which Plaintiffs' counsel work[1], are liable for defamation *per se* for statements made by Plaintiffs' counsel outside of court proceedings regarding Defendants' alleged defamatory statements that gave rise to this case.

Defendants also filed a motion entitled "Defendants' Motion to Strike Under GA §9-11-11.1," which states the following:

> Defendants [...] hereby move for summary judgment under Missouri R. Civ. P. 74.04(b), invoking Georgia's Anti-SLAPP statute, GA Code § 9-11-11.1 (2020) because Plaintiffs' claims asserted in their Second Amended Petition are based entirely on Defendants' exercise of their right to free speech in connection with an issue of public interest or concern, and Plaintiffs cannot establish that there is a probability of prevailing on their claims.

**MOTION TO DISMISS COUNTERCLAIM**

Defendants' Counterclaim asserts that Plaintiffs' counsel, the entities for which Plaintiffs' counsel work, and Plaintiffs themselves defamed Defendants when Plaintiffs' counsel uttered the following seven statements outside of the pleadings:

1. "The Gateway Pundit, along with its founding editor Jim Hoft, and contributor Joe Hoft, knowingly fabricated and

---

[1] Despite being named as counterclaim-defendants, Plaintiffs' counsel, and the entities for which Plaintiffs' counsel work, have not been joined as parties to this case, nor is there a motion before the Court asking that they be joined, nor has their conduct in this case indicated consent to the Court's jurisdiction over them.

2

disseminated blatantly false stories claiming that Ms. Freeman and Ms. Moss were involved in a conspiracy to commit election fraud, and continued to publish these untruths long after they were proven to be false." A statement by Protect Democracy on the website law4truth.org.

2. "The Hofts' defamations, aimed at undermining confidence in the 2020 election in an effort to overturn the will of the voters, targeted two Black women for doing their jobs as election workers. In significant measure because of the lies told by The Gateway Pundit, our clients were and continue to be targeted with threats of violence and racial intimidation." A statement by Protect Democracy on the website protectdemocracy.org.

3. "Lies like those that The Gateway Pundit knowingly told about Ruby Freeman and Shaye Moss cannot be divorced from the devastation they leave behind—both for the targeted individuals and for our democracy itself." A statement by Plaintiffs' attorney Brittany Williams on protectdemocracy.org.

4. "But that didn't stop some of the former president's top allies in the media – The Gateway Pundit, One America News Network – from continuing to spread that lie about our clients." A statement by Plaintiffs' attorney John Langford in an NPR interview.

5. "The defendants repeatedly published unverified and uncorroborated information claiming that Ms. Freeman and Ms. Moss were involved in a conspiracy to commit election fraud. They continue to publish these untruths long after they were proven to be false. Further, by identifying Ms. Freeman and Ms. Moss by name and publishing pictures of them online, Gateway Pundit caused, and was directly responsible for, the abuse and harassment Ms. Freeman and Ms. Moss suffered." A statement by Protect Democracy on the website protectdemocracy.org.

6. "Last year the Gateway Pundit knowingly published lies about two Georgia election workers." A Twitter post by Yale University's Media Freedom & Information Access (MFIA) Clinic.

7. "the type of disinformation campaign waged by the Gateway Pundit is undermining the very ability of our democracy to function." A statement by Plaintiffs' attorney David Schulz

3

on the MFIA Clinic website.

Plaintiffs move to dismiss Defendants' Counterclaim for two reasons. First, under Rule 55.27(a)(11), Plaintiffs assert that the Counterclaim is an improper, premature counterclaim in the nature of malicious prosecution. In the alternative, under Rule 55.27(a)(6), Plaintiffs assert that the Counterclaim fails to state a claim upon which relief can be granted because it (1) alleges defamation based on statements that are privileged and (2) fails to plead all elements of a defamation claim including that Plaintiffs had knowledge of falsity or serious doubts as the truth of their attorneys' statements, and that Defendants have suffered any damages as a result of the statements.

A motion to dismiss under Missouri Rule 55.27(a)(11) asserts a defense that "the counterclaim or cross-claim is one which cannot be properly interposed in this action." Plaintiffs argue that the Counterclaim seeks to hold them liable for statements made by their attorneys that simply echo their pleadings. Plaintiffs thus argue that the Counterclaim essentially alleges malicious prosecution, a claim that "is not cognizable until the original underlying suit has been prosecuted to a conclusion favorable to the party raising the malicious prosecution claim." See State ex rel. O'Basuyi v. Vincent, 434 S.W.3d 517 (Mo. banc 2014).

Plaintiffs further assert that their attorneys' statements comply with Rule of Professional Conduct 4-3.6. While the Rule

4

generally prohibits lawyers involved in litigation from making certain extrajudicial statements, it permits lawyers to state the claim, offense, or defense involved, and, unless prohibited by law, the identity of the persons involved. Rule 4-3.6(a)-(b).

The Court finds that while the Counterclaim purports to allege defamation, it is nonetheless in the nature of a claim for malicious prosecution. As such, the Court will dismiss the Counterclaim. Because the Court's ruling on Plaintiff's first argument is dispositive, it need not address Plaintiffs' arguments in the alternative.

### MOTION TO STRIKE

Plaintiffs assert two reasons that the Court should strike Defendants' Anti-SLAPP Motion made under Georgia Code Section 9-11-11.1. First, Plaintiffs argue that it seeks to apply a Georgia procedural rule in a Missouri state court case, and in the alternative, it does not meet the terms of the Georgia rule. Further, Plaintiffs argue that they should be awarded reasonable expenses associated with responding to the instant Motion because it is meritless and dilatory.

Under Missouri Rule 55.27(e), a party may request that "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" be stricken from any pleading. Missouri follows the rule that a forum state applies its own procedural law but chooses the applicable substantive law according to its conflict-

of-law doctrines. Harter v. Ozark-Kenworth, Inc., 904 S.W.2d 317, 320 (Mo. App. W.D. 1995).

Missouri has its own anti-SLAPP statute which provides a procedural mechanism for the early disposition of a SLAPP action. Section 537.528.1 RSMo. However, application of this statute is restricted to conduct or speech undertaken or made in connection with a public hearing or public meeting. Id. A public meeting includes any meeting held by a state of local government entity, including meetings of or presentations before state, county, city, town, or village councils, planning commissions, or review boards. Id. Because the statements at issue in this case were not uttered in connection with a public hearing or public meeting, Defendants acknowledge that Missouri's statute does not apply. Instead, Defendants seek to apply Georgia's anti-SLAPP statute whose more expansive scope encompasses, among other things, "[a]ny written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern." Ga. Section 9-11-11.1(c)(3).

Defendants assert that Georgia's statute provides substantive protection from this suit. The Court disagrees. Like its Missouri counterpart, the Georgia anti-SLAPP statute provides "procedural protection" against SLAPP actions. See Rogers v. Dupree, 824 S.E.2d 823, 830 (Ga. Ct. App. 2019) quoting Denton v. Browns Mill Dev. Co., 561 S.E.2d 431, 434 (Ga. 2002); see also Carbone v. CNN, Inc.,

6

910 F.3d 1345, 1348 ("The anti-SLAPP statute 'creates no substantive rights; it merely provides a procedural mechanism for vindicating existing rights.'").

Because Defendants' anti-SLAPP Motion is predicated on the Court's application of a foreign procedural law, the Court must grant Plaintiffs' Motion to Strike it. Because the Court's ruling on Plaintiff's first argument is dispositive, it need not address Plaintiffs' arguments in the alternative. The Court declines Plaintiffs' request for reasonable expenses associated with responding to this Motion.

THEREFORE, it is Ordered and Decreed as follows:

- Plaintiffs' Motion to Dismiss Defendants' Counterclaim is GRANTED. Defendants' Counterclaim is hereby dismissed.
- Plaintiffs' Motion to Strike Defendants' Anti-SLAPP Motion made under GA Code Section 9-11-11.1 is GRANTED. Defendants' Motion to Strike Under GA Code Section 9-11-11.1 is hereby stricken from the record.

SO ORDERED:

_____
MICHAEL STELZER, Judge

Dated: _July 24, 2023_

7