UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| TGP Communications, LLC. | Case No. 24-13938 (MAM) |
| Debtor. | |

**REPLY IN SUPPORT OF THE
MOTION OF RUBY FREEMAN AND WANDREA' ARSHAYE MOSS FOR
AN ORDER DISMISSING THE DEBTOR'S CHAPTER 11 CASE UNDER SECTIONS
1112(b) AND 305(a) OF THE BANKRUPTCY CODE OR, IN THE ALTERNATIVE,
MODIFYING THE AUTOMATIC STAY TO CONTINUE PREPETITION LITIGATION**

The Freeman Plaintiffs (together, with Dr. Eric Coomer, the "Prepetition Litigation Claimants"), as creditors of TGP Communications, LLC (the "Debtor" or "The Gateway Pundit"), by and through their undersigned counsel, respectfully file this reply (the "Reply") in support of the Motion and in response to the Debtor's response thereto [Docket No. 71] (the "Response").[1]

**REPLY**

1. The Debtor's actions the past month underscore how the Debtor is abusing the judicial process and why dismissal is justified. Just last week, the Debtor and Jim Hoft used their sizable platform to undermine the integrity of this proceeding and the entire bankruptcy system by accusing the U.S. Trustee of partisan motivation in an article. It then used these baseless accusations as a way to raise money. This episode is just one of many examples. Curiously, despite being given a full opportunity to submit declarations and testify in support of its filing, the Debtor has decided not to. Instead, the Response makes several conclusory and unsupported arguments about why the case has a valid bankruptcy purpose. For the reasons set forth herein, the Court should reject those arguments and dismiss The Gateway Pundit's chapter 11 case.

A. **The Debtor's Conduct Over the Past Month Justifies Dismissal**

2. Jim Hoft, the Debtor's sole employee and owner, skipped the first section 341 meeting of creditors on May 28 (the "341 Meeting"). When the 341 Meeting resumed on June 6, Mr. Hoft testified that he had *not* signed the Debtor's statement of financial affairs and schedules despite his electronic signature appearing on the document.[2] This troubling testimony is more indicative of evasiveness and a strategic diffusion of responsibility rather than genuine confusion. The record supports this conclusion. A mere five minutes before that 341 Meeting began, the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.
[2] *See* June 6, 2024 341 Meeting Tr., 11: 4-15.

1

Debtor filed a pleading signed by Jonathan Burns.[3] In that pleading, Mr. Burns (who is not an authorized representative of the debtor) certifies to the contents of the statement and schedules, and suggests that Jim Hoft was not involved in their preparation. Taken together, Mr. Hoft's testimony and the Certification either demonstrates Mr. Hoft's incompetence or is an improper attempt to frustrate the efforts of creditors to exercise their basic informational rights.[4]

3. When the 341 Meeting resumed on June 18, the Debtor testified to a number of facts further supporting dismissal. *First*, the Debtor testified that it has the ability to satisfy its obligations to non-litigation creditors as they come due.[5] *Second*, the Debtor confirmed that three prepetition loans totaling nearly $1 million given to related parties were all interest-free, without documentation, repayment schedules, or stated maturity dates.[6] *Third*, Mr. Hoft's testimony shows a number of corporate formalities not being respected, including (a) the Debtor extending Mr. Hoft one of those interest-and payment-free "loans" to acquire a condominium, (b) a second loan made by the Debtor to Mr. Hoft's brother for purposes Mr. Hoft allegedly does not recall, and (c) the Debtor owning a Porsche for Mr. Hoft's use.[7]

---

[3] *See Additional Certification of Information Contained Within Schedules and Statements of Financial Affairs* [Docket No. 52] (the "Certification"). Jonathan Burns is not an employee of the Debtor but (confusingly) has the title "General Counsel and Executive Vice President" of TGP Communications, LLC.

[4] As demonstrated in the non-exhaustive list of potential examples of "cause" under Bankruptcy Code Section 1112(b), post-petition actions are relevant to the inquiry of whether dismissal is justified. *In re Asanda Air II LLC*, 600 B.R. 714, 722 (Bankr. N.D. Ga. 2019) (granting motion to dismiss where debtor made misrepresentations and failed to disclose critical leases and prepetition transfers in its filings and noting "easiest way to fail the good faith test ... is for a debtor to misrepresent, lie, or otherwise mislead the court") (internal citations omitted).

[5] *See* June 18, 2024 341 Meeting Tr., 61:4-13. The Debtor also confirmed that the only reason it filed for bankruptcy was the Prepetition Litigations, and that the defense costs of those litigations are being paid from the Debtor's media professional insurance policy (the "Policy"). *See id.* 52: 15-20; 60: 13-18. In other words, the Prepetition Litigations are not impairing the Debtor's ability to pay creditors in the ordinary course of business now would they for the foreseeable future.

[6] *See generally id.*, 35-43. Prior to the Petition Date, the Debtor provided loans to (a) Jim Hoft ($799,860), (b) Joe Hoft ($21,000) and (c) the Justice League ($150,000).

[7] *See id.*, 47:18-24.

2

4. At the conclusion of that 341 Meeting, an attorney for the United States Trustee told the Debtor that it should not be surprised if its office files a motion to dismiss of its own.[8] But the Court need not await such a filing: it is already abundantly clear that this case is an abuse of the bankruptcy system. It is therefore highly ironic—in addition to being deeply problematic—that following the 341 Meeting, Jim Hoft published an article on The Gateway Pundit questioning the integrity of United States Trustee's office, in an attempt to cast doubt on this case and the bankruptcy system itself.[9] The Debtor then encouraged readers to give money to the Justice League, which is a non-debtor affiliate owned by Jim Hoft. To be clear, it is The Gateway Pundit that is undermining the integrity of the bankruptcy system, not the other parties in interest who, unlike The Gateway Pundit, did not choose to be here.[10]

### B. The Response Does Not Demonstrate that the Debtor's Chapter 11 Filing has a Valid Bankruptcy Purpose

5. The Debtor barely tried to establish this chapter 11 petition as a good faith filing. Rather than address this shortcoming, the Debtor's Response spills significant ink asserting that

---

[8] *See id.*, 80:4-7.

[9] *See* "*The Department of Justice is Targeting The Gateway Pundit in Their Hopes to Ruin Us—Secretly Injected Itself in Chapter 11 Case—Why*?" (https://www.thegatewaypundit.com/2024/06/department-justice-is-targeting-gateway-pundit-their-hopes/). The article accuses Mr. Ochs of the United States Trustee's office of being influenced by the "Biden DOJ" to prevent The Gateway Pundit from proceeding with its chapter 11 case. The article concludes by asking readers to "[P]lease help us in the historic battle for the truth by donating to our GiveSendGo account here." Somehow, the Debtor then represents to this Court that it does not accept politically-driven donations. *See* Response at p. 6. When the Court is evaluating the Motion, it should do so through the lens of the Debtor's extreme comfort with misrepresenting the truth. *See e.g.,* Docket Nos. 30, 34 (answering "No" to whether the Debtor provided compensation to insiders in the one year prior to the Petition Date).

[10] In addition to abusing the bankruptcy system, the Debtor also misrepresents the Freeman Plaintiffs' claims against it. First, it is incorrect to categorize the blatantly false statements of fact the Debtor made about the Freeman Plaintiffs as "opinion and editorial content." *See* Objection at ¶ 4. Second, the Response suggests that the Debtor's statements about the Freeman Plaintiffs "were derived from and restated by Former President Donald Trump, and New York Mayor Rudy Giuliani*." See* Response at ¶ 4. However, the Debtor was the first to name the Freeman Plaintiffs as Fulton County election workers involved in voter fraud and has historically bragged about being the first outlet to "break" the story. *See*, *e.g.*, *WTH? John F. Kennedy Library Foundation Lumps President Zelensky In With Pack of Election Crooks, Cowards and Liars In Latest "Profile in Courage" Awards*, Gateway Pundit (Apr. 22, 2022, 11:05 AM), https://www.thegatewaypundit.com/2022/04/wth-john-f-kennedy-library-foundation-lumps-president-zelensky-pack-election-crooks-cowards-liars-latest-profile-courage-awards/. Moreover, the Debtor, unlike most other outlets, continued to repeat the false claims against the Freeman Plaintiffs long after they were established to be untrue.

3

the *Piccadilly* factors do not apply here because this is not a single-asset real estate case. But the *Piccadilly* factors have been applied to a wider context of cases and no case cited in the Response suggests otherwise.[11] By spending so much time on this analysis, the Response does not meaningfully address the heart of the issue: under the totality of the circumstances, has the Debtor demonstrated a valid bankruptcy purpose? The answer is no.

6. The Response argues that the purpose of the Debtor's chapter 11 filing is to "maximize property available to satisfy creditors." However, this case is not serving the interests of any creditors. The Debtor's creditors fall into two buckets: the Prepetition Litigation Claimants, and all other creditors. The Debtor testified that if the Prepetition Litigation Claimants are set aside, the Debtor can pay its creditors in the ordinary course of business.[12] If the chapter 11 case is allowed to go forward, these non-litigation creditors will wait years to get a fractional recovery on their claims. Alternatively, if the case is dismissed, the Debtor can pay these creditors in full immediately. Thus, the chapter 11 filing is not maximizing property available to satisfy these creditors—it's accomplishing the exact opposite and denying them timely payments in full.

7. At bottom, the Debtor's claim to be maximizing the value of estate property comes down to the remaining $1.3 million available under the Insurance Policy. Tellingly, the only parties who have an economic interest in those funds—the Prepetition Litigation Parties—both want this case dismissed. Indeed, there are strong reasons to doubt that the Debtor suddenly became a responsible fiduciary for the Prepetition Litigation Claimants in April 2024 (especially after burning through $700,000 of coverage implementing various delay tactics). Most notably, the timing of this about-face occurred on the same date the Hoft brothers were served with deposition

---

[11] *In re Boughton*, 243 B.R. 830, 834 (Bankr. M.D. Fla. 2000) (noting the Court continues to employ the *Phoenix Piccadilly* factors in multiple asset cases).

[12] *See* June 18, 2024 341 Meeting Transcript, 61:4-13.

4

notices in the Missouri Litigation. Moreover, the Debtor's failure to initiate any meaningful settlement discussions with the Prepetition Litigation Parties prior to the Petition Date undermines any notion that the Debtor has the Prepetition Litigation Parties' interests at heart.[13] In addition, the Debtor has continued to publish defamatory statements about the Freeman Plaintiffs during the pendency of the bankruptcy,[14] thereby creating administrative claims that will only continue to erode distributable value for creditors. All of this suggests that the true purpose of filing the petition is to avoid discovery in the Prepetition Litigation and not maximizing value for creditors.

8. If anything, this case appears to be part of a larger effort by Jim Hoft to minimize his personal liability. Jim Hoft is a defendant in both the Missouri Litigation and Colorado Litigation, but has not filed for personal bankruptcy. As the Debtor's only employee, owner, and principal publisher, editor and philosophical leader, the line between where Jim Hoft ends and The Gateway Pundit starts is blurry to non-existent. Accordingly, settling with *only* Jim Hoft or *only* the Debtor is all but impossible—a fact the Freeman Plaintiffs know better than anyone. Mr. Hoft appears to see the subchapter V plan process as a means to advance his own personal interests, perhaps by increasing the pressure on the Prepetition Litigation Parties to reach a global settlement.

9. Put simply, this case is a sham filing. The Court should not stand by as the Debtor undermines the bankruptcy process, makes numerous misrepresentations in court filings, and frustrates the rights of creditors without a legitimate reason for being in bankruptcy. Accordingly, the Motion should be granted and The Gateway Pundit's chapter 11 case should be dismissed.

---

[13] These conversations have also not occurred after the Petition Date. In yet another example of the Debtor misrepresenting facts to the Court, the Debtor previously stated that "Efforts have been made to discuss the confirmation of a consensual plan with the largest creditor constituents." *See* Docket No. 27 at ¶ 6. However, no such conversations have ever taken place with the Freeman Plaintiffs.

[14] *See e.g.*, *This Video Right Here is Why The Gateway Pundit is Under Constant Assault and Lawfare Attacks by the Tyrannical Left…*, The Gateway Pundit (May 29, 2024, 8:15 AM), https://www.thegatewaypundit.com/2024/05/this-video-right-here-is-why-gateway-pundit/.

Dated: June 25, 2024

By: */s/ David A. Blansky*

| | |
|---|---|
| David A. Blansky | Rachel C. Strickland (admitted *pro hac vice*) |
| Florida Bar No. 1033002 | Aaron E. Nathan (admitted *pro hac vice*) |
| Michael P. Dunn | James H. Burbage (admitted *pro hac vice*) |
| Florida Bar No. 100705 | WILLKIE FARR & GALLAGHER LLP |
| DUNN LAW, P.A. | 787 Seventh Avenue |
| 66 West Flager Street, Suite 400 | New York, NY 10019 |
| Miami, FL 33130 | Telephone: (212) 728-8000 |
| Telephone: (786) 433-3866 | Facsimile: (212) 728-8111 |
| Facsimile: (786) 260-0269 | rstrickland@willkie.com |
| dblansky@dunnlawpa.com | anathan@willkie.com |
| michael.dunn@dunnlawpa.com | jburbage@willkie.com |
| | |
| -and- | -and- |
| | |
| Rachel Goodman (admitted *pro hac vice*) | Michael J. Gottlieb (admitted *pro hac vice*) |
| Brittany Williams (admitted *pro hac vice*) | Meryl C. Governski (admitted *pro hac vice*) |
| UNITED TO PROTECT DEMOCRACY | WILLKIE FARR & GALLAGHER LLP |
| 82 Nassau Street, #601 | 1875 K Street NW |
| New York, NY 10038 | Washington, DC 20006 |
| Telephone: (202) 579-4582 | mgottlieb@willkie.com |
| rachel.goodman@protectdemocracy.org | mgovernski@willkie.com |
| brittany.williams@protectdemocracy.org | |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF), on this 25th day of June, 2024 upon counsel for the Debtor and registered users in this case.

By: */s/ David A. Blansky*
David A. Blansky, Esq.
Florida Bar No. 1033002