**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                                    Chapter 11

**TGP COMMUNICATIONS, LLC**                  Case No.  24-13938-MAM

     **Debtor.**

_____/

# CHAPTER 11 SUBCHAPTER V
# PLAN OF REORGANIZATION

**HOUSTON RODERMAN**
633 S. Andrews Avenue, Suite 500
Ft. Lauderdale, FL 33301
Phone: (954) 900-2615
Facsimile: (954) 839-9068
bhouston@houstonroderman.com
dschena@houstonroderman.com
*Attorney for Debtor and*
*Debtor in Possession*

Dated:  July 23, 2024

**IMPORTANT**

THIS PLAN OF REORGANIZATION CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN.  ALL HOLDERS OF CLAIMS (AS DEFINED BELOW) ARE ENCOURAGED TO READ THE PLAN CAREFULLY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS PLAN OF REORGANIZATION AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVISE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE CASTING A VOTE WITH RESPECT TO THE PLAN.

## TABLE OF CONTENTS

**ARTICLE I.  INTRODUCTION** .................................................................................. 1

    **A.** PURPOSE. .......................................................................................................... 1
    **B.** DISCLAIMER. .................................................................................................... 1
    **C.** OVERVIEW OF THE PLAN. ................................................................................. 1

**ARTICLE II.  DEFINITIONS AND INTERPRETATION** ...................................... 2

    **A.** DEFINITIONS. .................................................................................................... 2
    **B.** INTERPRETATION; APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION. ... 7
    **C.** REFERENCE TO MONETARY FIGURES. ............................................................... 7

**ARTICLE III.  BACKGROUND** ................................................................................ 7

    **3.1** CORPORATE OVERVIEW. .................................................................................. 8
    **3.2** DEBTOR'S BUSINESS OPERATIONS. .................................................................. 8
    **3.3** THE DEBTOR'S CAPITAL STRUCTURE. ............................................................. 8
        **A.** Secured Debt. ........................................................................................... 8
        **B.** Unsecured Debt. ...................................................................................... 8
        **C.** Equity. ..................................................................................................... 8
    **3.4** EVENTS LEADING TO CHAPTER 11 CASE. ........................................................ 8
    **3.5** OVERVIEW OF CHAPTER 11 CASE. .................................................................. 9
    **3.7** CLAIMS RECONCILIATION PROCESS. ............................................................... 10

**ARTICLE IV.  ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS** ...... 10

    **4.1** ADMINISTRATIVE EXPENSE CLAIMS. .............................................................. 10
    **4.2** PRIORITY TAX CLAIMS. .................................................................................. 11

**ARTICLE V.  CLASSIFICATION OF CLAIMS** ................................................... 11

    **5.1** CLASSIFICATION IN GENERAL. ........................................................................ 11
    **5.2** SUMMARY OF CLASSIFICATION. ...................................................................... 11
    **5.3** SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS. ................................. 12
        **5.4** CONFIRMATION PURSUANT TO SECTIONS 1129(A)(10) AND 1129(B) OF THE BANKRUPTCY CODE. ...................................................................................... 12

**ARTICLE VI.  TREATMENT OF CLAIMS** .......................................................... 12

    **6.1** PREPFORT SECURED CLAIMS (CLASS 1) ........................................................ 12
    **6.2** GENERAL UNSECURED CLAIMS (CLASS 2) .............. ERROR! BOOKMARK NOT DEFINED.
    **6.3** EQUITY INTERESTS (CLASS 3) ....................................................................... 12

**ARTICLE VII.  MEANS FOR IMPLEMENTATION** ............................................ 13

# TABLE OF CONTENTS
## (CONTINUED)

7.1    SOURCES OF CONSIDERATION FOR PLAN DISBURSEMENTS. ........................................ 13

7.2    PRESERVATION OF CAUSES OF ACTION. ............................................................... 13

7.3    CORPORATE GOVERNANCE; DISSOLUTION. .......................................................... 13

**ARTICLES IX.   DISBURSEMENTS** ........................................................................... 14

9.4    DISBURSEMENTS. .............................................................................................. 14

**ARTICLE X.   CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN** ............. 15

10.1   CONDITIONS PRECEDENT TO EFFECTIVE DATE. .................................................. 15

10.2   WAIVER OF CONDITION PRECEDENT. ................................................................. 15

10.3   EFFECT OF FAILURE OF A CONDITION. ............................................................... 15

**ARTICLE XI.   EFFECT OF CONFIRMATION OF PLAN** ...................................... 15

11.1   VESTING OF PROPERTY OF THE ESTATE. ........................................................... 15

11.2   SUBORDINATED CLAIMS. .................................................................................. 16

11.3   BINDING EFFECT. ............................................................................................. 16

11.4   CLOSING OF CHAPTER 11 CASE. ...................................................................... 16

11.5   NOTICE OF EFFECTIVE DATE. ........................................................................... 16

11.6   TERM OF INJUNCTIONS OR STAYS. .................................................................... 16

11.7   INJUNCTIONS AND STAYS. ................................................................................ 17

11.9   DISCHARGE OF DEBTOR. ........................................**ERROR! BOOKMARK NOT DEFINED.**

11.10   SOLICITATION OF PLAN. ................................................................................ 17

**ARTICLE XII.   RETENTION OF JURISDICTION** ............................................... 18

12.1   RETENTION OF JURISDICTION. .......................................................................... 18

12.2   COURTS OF COMPETENT JURISDICTION. ............................................................ 19

**ARTICLE XIII.   MISCELLANEOUS PROVISIONS** ............................................. 19

## TABLE OF CONTENTS
### (CONTINUED)

13.1    SUBSTANTIAL CONSUMMATION OF THE PLAN..............................................................19

13.2    PLAN MODIFICATIONS. ........................................................................................19

13.3    GOVERNING LAW. ............................................................................................19

13.4    TIME.............................................................................................................20

13.5    DATES OF ACTIONS TO IMPLEMENT THE PLAN..........................................................20

13.6    IMMEDIATE BINDING EFFECT. ..............................................................................20

13.7    DEEMED ACTS. ...............................................................................................20

13.8    FILING OF FINAL REPORT. ..................................................................................20

13.9    NOTICES. .......................................................................................................20

# ARTICLE I.  INTRODUCTION

A.    **Purpose.**

This is the plan of reorganization (the "**Plan**") of TGP Communications, LLC ("**Debtor**"), as debtor and debtor-in-possession in the above captioned Chapter 11, Subchapter V case (the "**Chapter 11 Case**") pending in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**").

The purpose of the Plan in the Chapter 11 Case is to provide Holders of Claims with adequate information regarding the (i) Debtor's history and the Chapter 11 Case; (ii) rights of interested parties; and (iii) other information necessary to enable creditors entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan.

B.    **Disclaimer.**

The information contained in this Plan including any attachments thereto concerning the financial condition of the Debtor is based upon financial and other information as of the date of the filing of this Plan.  The information contained in this Plan was obtained from the Debtor, the Debtor's books and records, and pleadings and other filings with the Bankruptcy Court.  The Debtor's books and records have not been audited.  As such, the Debtor cannot verify the complete accuracy of the information.  The Debtor, however, is not aware of any material misrepresentations or omissions in this Plan.

No representations concerning the financial condition of the Debtor or any aspect of the Plan are authorized by the Debtor except as set forth in this Plan.  If and to the extent that any such representations have been made to any creditor or party-in-interest, then such representations should be reported to counsel to the Debtor or to the Office of the United States Trustee (the "**U.S. Trustee**").  Any such representations or inducements made to secure your acceptance or rejection of the Plan which is other than as set forth in this document should not be relied upon by you in deciding whether to accept or reject the Plan.  You should read this Plan in its entirety before voting to accept or reject the Plan.

C.    **Overview of the Plan.**

The Plan provides for the reorganization of the Debtor's business in this Chapter 11 Case with all disposable income from the Debtor's business assets to be distributed to the Debtor's creditors.  Except as otherwise ordered by the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**"), treatment and satisfaction of all Allowed Claims (as defined below) will occur over 3-5 years after the Plan is confirmed.  The Plan also includes a description of the Debtor's business operations along with a brief history of the events leading up to the Debtor's bankruptcy filing and a liquidation analysis as required by Section 1190 of the Bankruptcy Code.

The Projection of Disposable Income for the following 3 year period is attached to this Plan as ***Exhibit "A"***.  The Liquidation Analysis is attached as ***Exhibit "B"***.

## ARTICLE II. DEFINITIONS AND INTERPRETATION

A.    **Definitions.** The following terms shall have the respective meanings specified below:

2.1    **"*Administrative Expense Claim*"** shall mean a Claim against the Estate of the Debtor allowed by order of the Bankruptcy Court pursuant to Section 503(b) and entitled to priority under Section 507(a)(1) or 507(b) of the Bankruptcy Code, including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and of operating the business of the Debtor; (ii) any payment to be made under this Plan to cure a default on an executory contract or unexpired lease that is assumed pursuant to Section 365 of the Bankruptcy Code, (iii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iv) compensation or reimbursement of expenses of Professionals to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331 of the Bankruptcy Code, (v) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court, including under Section 546(c)(2)(A) of the Bankruptcy Code, and (vi) all fees and charges assessed against the Debtor's Estate pursuant to 28 U.S.C. §1930(a).

2.2    **"*Allowed*"** when used as an adjective preceding the words "Claim" shall mean any Claim against the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim, or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in his Schedules as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" shall not, for purposes of computation of disbursements under the Plan, include interest on the amount of such Claim from and after the Petition Date.

2.3    **"*Allowed Administrative Claim*"** shall mean all or that portion of an Administrative Claim, including those administrative claims for Professionals, which has been allowed by a Final Order of the Bankruptcy Court.

2.4    **"*Allowed Claim*"** shall mean a Claim: (a) (i) proof of which was timely and properly filed on or before the Bar Date, (ii) proof of which was deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) if no such proof was filed or deemed filed, such Claim has been or hereafter is listed by the Debtor on their Schedules as liquidated in amount and not disputed or contingent and, in any case, as to which (A) no objection to the allowance thereof has been or is interposed, or (B) if an objection is made, any such objection has been settled, withdrawn or determined by a Final Order; (b) based on an application of a Professional under Section 330, Section 331, or Section 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case, to the extent such application is approved by a Final Order; or (c) expressly allowed under this Plan or the Confirmation Order. Unless otherwise specified herein or by order of the Bankruptcy Court, an Allowed Claim shall not include interest on such Claim for the period from and after the Petition Date.

2

2.5    **"*Allowed Priority Claim*"** shall mean a Priority Claim which is not a Disputed Claim; or, if disputed has been Allowed by a Final Order of the Bankruptcy Court.

2.6    **"*Allowed Unsecured Claim*"** shall mean an Unsecured Claim which is not a Disputed Claim; or, if disputed has been allowed by a Final Order of the Bankruptcy Court.

2.7    **"*Assets*"** shall mean the Debtor's Assets.

2.8    **"*Bankruptcy Code*"** shall mean Title 11 of the United States Code, 11 U.S.C.§ 101, *et. seq.*, in effect as of the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case.

2.9    **"*Bankruptcy Court*"** shall mean the United States Bankruptcy Court for the Southern District of Florida.

2.10    **"*Bankruptcy Rules*"** shall mean (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of title 28 of the United States Code; (ii) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of title 28 of the United States Code; (iii) the Local Rules of the United States Bankruptcy Court for the Southern District of Florida; and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case or proceedings herein, as the case may be.

2.11    **"*Bar Date*"** shall mean July 3, 2024, the last date for Creditors to file proofs of Claims in this Chapter 11 Case, provided however that with respect to Government Units, the Bar Date is October 21, 2024.

2.12    **"*Business Day*"** means any day other than a Saturday, a Sunday, or any other day on which banking institutions are required or authorized to close by law or executive order.

2.13    **"*Cash*"** shall mean cash on hand on the Effective Date from the liquidation of Assets or any other source.

2.14    **"*Causes of Action*"** shall mean any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to Section 362 or Chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in Section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

2.15 **"*Chapter 11 Case*"** shall mean the proceedings under Chapter 11 of the Bankruptcy Code for the liquidation of the Debtor.

2.16 **"*Claim*"** shall mean any claim, as that term is defined in Section 101(5) of the Bankruptcy Code, including, without limitation, any claim of right to payment, liquidated, unliquidated, contingent, matured, unmatured, disputed or undisputed, legal, equitable, secured or unsecured.

2.17 **"*Claim Objection Deadline*"** shall mean the date set by order of the Bankruptcy Court for objecting to Claims against the Estate as may be extended from time to time.

2.18 **"*Class*"** or **"*Classes*"** shall mean each class or classes of Creditors classified under the Plan pursuant to Section 1122 of the Bankruptcy Code.

2.19 **"*Confirmation*"** shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

2.20 **"*Confirmation Date*"** shall mean the date on which the Confirmation Order is entered on the computerized docket maintained by the Clerk of the Bankruptcy Court.

2.21 **"*Confirmation Hearing*"** shall mean the hearing conducted by the Bankruptcy Court under Section 1128 of the Bankruptcy Code wherein the Bankruptcy Court shall consider confirmation of this Plan, in accordance with Section 1129 of the Bankruptcy Code, as the same may be continued from time to time.

2.22 **"*Confirmation Order*"** shall mean the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

2.23 **"*Creditor*"** shall mean any Person which has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

2.24 **"*Debtor*"** or **"*Debtor in Possession*"** shall mean TGP Communications, LLC.

2.25 **"*Debtor's Principal*"** shall mean James Hoft, the Debtor's Chief Executive Officer and sole member holding all of the equity in the Debtor.

2.26 **"*Disbursements*"** shall mean payment of all Allowed Administrative Expense Claims, including Administrative Claims for Professionals, all Allowed Priority Claims, and the corresponding fees of the Office of the United States Trustee incurred by the Debtor with respect to such disbursements as of the Effective Date, and all Allowed Unsecured Claims.

2.27 **"*Disputed Claim*"** shall mean all Claims: (a) which are listed in the Schedules as disputed, contingent or unliquidated, or (b) as to which (i) a proof of Claim has been filed; (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by any party in interest; and (iii) no Final Order has been entered thereon. In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of

disbursement under this Plan unless a Final Order has been entered allowing such Claim. Without limiting any of the above, a Claim that is the subject of a pending objection, motion, complaint, counterclaim, setoff, avoidance action, litigation claim or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim.

2.28    "*Disbursement Date*" shall mean the 30th day following the Effective Date every successive 30th day after that date.

2.29    "*Effective Date*" shall mean the date which is fifteen (15) days after the date the Confirmation Order is entered on the Bankruptcy Court's computerized docket by the clerk of the Bankruptcy Court.

2.30    "*Entity*" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, indenture trustee, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in Section 101(41) of the Bankruptcy Code) or other entity.

2.31    "*Estate*" shall mean the estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code on the Petition Date.

2.32    "*Final Order*" shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired and no appeal or motion for rehearing and/or reconsideration has been filed; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion has been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered; provided however, that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable. Provided further that the possibility that a motion under Rule 59 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

2.33    "*Final Decree*" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

2.34    "*General Unsecured Claim*" means any Claim against the Debtor, that is not (a) an Administrative Expense Claim, (b) a Priority Tax Claim, (c) a Non-Priority Tax Claim, and (d) a Secured Claim.

2.35    "*Government Unit*" shall have the meaning as such term is defined in section 101(27) of the Bankruptcy Code.

2.36    "*Impairment*" or "*Impaired*" shall have the meaning under Section 1124 of the Bankruptcy Code.

2.37    "*Interests*" means any membership interest of the Debtor.

2.38    **"*Lien*"** shall mean any valid and undisputed mortgage, lien, charge, security interest, encumbrance or other security device of any kind affecting any Asset of the Debtor or the Debtor's Estate.

2.39    **"*Objection*"** shall mean any objection, application, motion, complaint or any other legal proceeding, including, with respect to the terms of this Plan, seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) other than an Allowed Claim.

2.40    **"*Petition Date*"** shall mean April 24, 2024, the date of the commencement of this Chapter 11 Case.

2.41    **"*Plan*"** shall mean this Plan in its entirety, together with all addenda, exhibits, and schedules in its present form or as it may be modified, amended, or supplemented from time to time.

2.42    **"*Preserved Causes of Actions*"** means any Causes of Action that are preserved and not released, vested, settled or sold to a third party under the Plan or any other order of the Bankruptcy Court, including the Specified Causes of Action.  For the avoidance of doubt, the Debtor will retain all rights to commence and pursue all Preserved Causes of Actions.

2.43    **"*Priority Claim*"** shall mean a Claim entitled to priority under Section 507(a)(1)–(10) of the Bankruptcy Code.

2.44    **"*Priority Non-Tax Claim*"** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in Section 507(a) of the Bankruptcy Code.

2.45    **"*Priority Tax Claim*"** shall mean a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

2.46    **"*Proof of Claim*"**  means a proof of Claim filed against any of the Debtor in the Chapter 11 Case.

2.47    **"*Professionals*"** shall mean a person employed in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code, for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

2.48    **"*Debtor's Assets*"** shall mean the assets of the Debtor which shall consist of all property of the Estate as defined in 11 U.S.C. § 541 of the Bankruptcy Code, including without limitation, the following: (i) all legal or equitable interests of the Debtor in any and all real or personal property of any nature, together with any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses acquired by the Debtor pre-petition, materials, supplies, furniture, fixtures equipment, and any general tangibles and intangibles, and the proceeds, product, offspring, rents or profits thereof; and (ii) any and all litigation claims,

Causes of Action, demands, suits, actions at law or equity and other legal, beneficial and equitable rights, claims or interests that the Debtor or Reorganized Debtor has or may have against any Entity.

2.49    "*Schedules*" shall mean the Schedules and Statement of Financial Affairs filed by the Debtor pursuant to Sections 521(1) and 1106(a)(2) of the Bankruptcy Code, as amended and supplemented.

2.50    "*Houston Roderman*" shall mean Houston Roderman, PLLC., the Debtor's present court-approved general bankruptcy counsel.

2.51    "*Unimpaired*" means, with respect to a Claim or Class of Claims, not "Impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

2.52    "*Unsecured Claim*" shall mean any Claim against the Debtor's Estate that is not an Administrative Claim, a Post-Confirmation Administrative Claim, a Priority Claim, a Secured Claim or a Priority Tax Claim.

B.    **Interpretation; Application of Definitions and Rules of Construction.**

Any term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if used therein. The words "herein", "hereof", "hereunder" and other words of similar import refer to this Plan as a whole, not to a particular section, subsection, paragraph, subparagraph or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter. All captions and headings to articles and paragraphs of the Plan are inserted for convenience and reference only and are not intended to be a part or to affect the interpretation of the Plan. Any rules of construction set forth in Section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order. In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of the Bankruptcy Rule 9006(a) shall apply.

C.    **Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

### ARTICLE III.  BACKGROUND

This section provides a brief overview and history of the Debtor's business operations and summarizes the events leading up to the filing of the Chapter 11 Case and certain key events in the Chapter 11 Case.  Creditors and other parties-in-interest may disagree with statements contained in this section.  This section is for informational purposes only and shall not be deemed accurate or have preclusive effect in any future proceeding.

3.1    **Business/Corporate Overview.**

Founded in 2004, The Gateway Pundit (TGP) is an online news publication consisting of news, commentary and analysis.  Originally founded in 2004 as TheGatewayPundit/blogspot.com by Jim Hoft who is the Editor of TGP. At the time the site primarily wrote brief introductions and linked to other content producers serving as a hub for important current events in the political and media sphere. The site was established for readers tired of limited options and a politicized establishment media.  The first readers included Joe, Jim's twin brother, Midwest Engineer and Jim's mother … and it grew from there. In 2011, the website moved to its current location as www.thegatewaypundit.com.  TGP's audience grew rapidly and added additional writers to the staff. Today over 2.5 million unique readers every day visit TGP.  Editorially, The Gateway Pundit espouses politically conservative world view that support conservative positions on most issues, including abortion, national defense, small government, second amendment rights, tax policy, individual freedom and Constitutional values.

In November 2013, the business became owned by TGP Communications, LLC and from that date forward continued its Business under this corporate ownership.

3.2    **The Debtor's Capital Structure.**

A.    **Secured Debt.**  The Debtor does not have any secured creditors.

B.    **Unsecured Debt.**  As of the Petition Date, the Debtor disclosed $102,596.00 in aggregate liquidated unsecured debts.  An additional amount of $250.00 was claimed in timely proof of claims. Several claims were filed after the Bar Date totaling $ 172,527.00. The late filed claims may be duplicative of the Schedule

As of the Bar Date, three (3) claims for unliquidated unsecured debt claims have been filed in the total amount of "unknown".

C.    **Equity.**  All of the equity, otherwise known as the membership interest, in the Debtor is owned by James Hoft.

3.3    **Events Leading to Chapter 11 Case.**

Shortly after the 2020 National Election, the Debtor published and proclaimed opinion and information concerning voter fraud and other acts of election interference resulting in the election of Joe Biden as the 46th President.

Among the information published in opinion and editorial content, was the allegations concerning Eric Coomer, the Director of Security for Dominion Voting Systems. On December 22, 2020, Eric Coomer filed a civil action against the Debtor, Jim Hoft, and various other defendants in District Court, Denver County, Colorado (the "Colorado Litigation"). In the Colorado Litigation, Eric Coomer seeks damages for alleged defamation, intentional infliction of emotional distress, and civil conspiracy, along with a preliminary and permanent injunction, and

a demand for retraction in connection with statements made by the Debtor about Eric. Coomer in connection with the 2020 election.

In addition, the Debtor published and echoed allegations made concerning two (2) election workers Ruby Freeman and Wandrea Arshaye Moss in Georgia and asserted that these two individuals were involved in voter fraud. These allegations were echoed throughout the right-wing conservative outlets and echoed by former President, Donald Trump and former New York Mayor, Rudy Giuliani. On December 2, 2021, Ruby Freeman and Wandrea Arshaye Moss (the "Freeman Plaintiffs") initiated litigation against the Debtor in the St. Louis Missouri Circuit Court (the "Missouri Litigation"). In the Missouri Litigation, the Freeman Plaintiffs seek damages for alleged defamation and the intentional infliction of emotional distress in connection with statements made by the Debtor about the Freeman Plaintiffs in connection with the 2020 presidential election.

The Colorado Litigation and the Missouri Litigation (collectively, the "Pre-Petition Litigations") are covered under the Debtor's Media Liability insurance policy (the "Policy") with a limit of two ($2,000,000) million dollars.  The Policy is a wasting policy as the limit of coverage includes defense costs that are incurred during the course of defensing the Debtor on the Pre-Petition Litigations. There remains approximately $1.3 million of coverage under the Policy as of the Petition Date.

The combined cost (diminution of policy limits) of the Pre-Petition Litigations together with the distractions  cause by multi district litigations have contributed to the Debtor's decision to file this Chapter 11 bankruptcy case.

### 3.4    Overview of Chapter 11 Case.

On April 24, 2024, the Debtor filed its Voluntary Petition under Chapter 11, Subchapter of the Bankruptcy Code.  The Debtor believed that the Chapter 11 process would allow the liquidation of its unliquidated unsecured debt and allow those debts to be treated in such a manner as to allow the continuation and reorganization of its Business.

On April 25, 2024, the Office of the United States Trustee (UST) appointed Linda Leali, Esq. of Linda Leali P.A, as subchapter V trustee in the Debtor's Chapter 11 Case. [ECF No. 6]. The Debtor continues to manage its assets as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

On May 30, 2024,  the UST commenced the meeting of creditors as mandated by Section 341 of the United States Bankruptcy Code (the "Bankruptcy Code").  The creditors meeting was continued and re-commenced on June 6, 2024 and June 18, 2024.  The Creditors meeting was concluded on June 18, 2024.

On April 30, 2024, the Debtor filed its Application for Authorization to Employ and Retain Houston Roderman, PLLC as Bankruptcy Counsel for Debtor-In-Possession. [ECF No. 14].  On _____, the Bankruptcy Court entered its Order approving the retention. [ECF No. __ ]

On May 21, 2024, the Debtor filed its Motion for entry of an order Authorizing the Debtor to Suppress Personally Identifiable Information for Certain Individual Creditors.  [ECF No. 26]. On June 24, 2024, the Bankruptcy Court entered its Order deferring ruling on the Motion the for further argument on June 27, 2024. [ECF No. 77]  Prior to the June 27th hearing, the UST filed its Motion seeking to continue the hearing was granted by Order dated July 3, 2024 [ECF No. 85].

On  May 31, 2024, the Freeman Plaintiffs filed their Motion For An Order Dismissing The Debtor's Chapter 11 Case Under Sections 1112(B) And 305(A) Of The Bankruptcy Code Or, In The Alternative, Modifying The Automatic Stay To Continue Prepetition Litigation (the "Motion to Dismiss Bankruptcy Case").  [ECF No. 39].  On June 8, 2024, Eric Coomer filed his Joinder to the Motion to Dismiss Bankruptcy Case. [ECF No. 57]. Thereafter, the Debtor filed its Response [ECF No. 71] and the moving parties filed their Replies [ECF No. 79, 81]. On June 27, 2024, the Court heard oral arguments on the Motion to Dismiss the Bankruptcy Case and considered the arguments by the Pre-petition Litigation creditors in support and the Debtor's response in opposition to the Motion. The Court took the matter under advisement and scheduled another hearing for August 2, 2024.

3.8 **Claims Reconciliation Process.**

The Bankruptcy Court has established the Claims Bar Date deadline as July 3, 2024 requiring any person or entities holding or asserting a pre-petition claim against the Debtor to file a written proof of claim with the Bankruptcy Court. The Debtor has assessed the Claims filed as of Claims Bar Date and is expected to file objections to claims prior to the Confirmation Hearing. Any person or entity (other than governmental unit and professionals retained in the Chapter 11 Case) that failed to timely file a proof of claim may be forever barred, estopped and enjoined from voting on, or receiving disbursement under the Plan and may be forever barred, estopped and enjoined from asserting a claim against the Debtor.

### ARTICLE IV.  ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

4.1     *Administrative Expense Claims.*

Administrative Expense Claims include any right to payment constituting a cost or expense of administration of the Chapter 11 Case of a kind specified under Section 503(b) of the Bankruptcy Code and entitled to priority under Sections 507(a)(1), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's Estate, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Bankruptcy Court under Sections 330, 331, or 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtor under 1930 of Chapter 123 of Title 28 of the United States Code.

Each holder of an Allowed Administrative Expense Claims against the Estate shall be paid one hundred percent (100%) of their Allowed Administrative Expense Claims in Cash from the

Debtor, unless otherwise ordered by the Bankruptcy Court, on the later of: (i) the Effective Date or the date of a Final Order allowing such Administrative Claim becomes an Allowed Expense Administrative Claim; or (ii) for liabilities incurred by the Debtor in the ordinary course during this Chapter 11 Case, the date on which each such Claim becomes due in the ordinary course and in accordance with the terms and conditions of any agreement relating thereto; or (iii) upon such other dates and terms as may be agreed upon by the holder of any such Allowed Administrative Expense Claim and the Debtor.

The Debtor's Counsel received a fee retainer in the amount of $50,000.00 and cost retainer of $7,500.00. Much of the fee retainer was consumed prior to the Petition Date for pre-filing matters. At this point, and presuming moderately aggressive resistance to the conformation of the Plan by the Pre-petition Litigation Creditors, additional fees due at confirmation are estimated to be less than $100,000.00

### 4.2    *Priority Tax Claims.*

Upon the later of the Effective Date or the date upon which such Priority Tax Claim is Allowed, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (ii) such other treatment as to which the Debtor and such Holder have agreed upon.

The Internal Revenue Service has filed a timely proof of claim for unpaid employment taxes totaling $16,303.02.

## ARTICLE V.   CLASSIFICATION OF CLAIMS

### 5.1    *Classification in General.*

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims. A Claim is placed in a particular Class only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled or paid prior to the Effective Date. In accordance with Sections 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, are deemed not to be Impaired and are treated as set forth in Article II above.

### 5.2    *Summary of Classification.*

The following table designates the Classes of Claims against the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Priority Tax Claims have not been classified.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | General Unsecured Claims | Impaired | Yes |
| 2 | Equity Interests | Unimpaired | No |

5.3    ***Special Provision Governing Unimpaired Claims.***

Nothing under the Plan shall affect the rights of the Debtor, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

5.4    ***Confirmation Pursuant to Sections 1191(b) of the Bankruptcy Code.***

The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to Section 1191(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims.

## ARTICLE VI.   TREATMENT OF CLAIMS

6.1    ***General Unsecured Claims (Class 1)***

*Classification*: Class 1 consists of holders of Allowed General Unsecured Claims

*Treatment:* Each holder of a Class 1 Allowed Claim shall receive pro rata payment from the Debtor's Projected Net Income from the Debtor's Business for a period of three (3) years. The first disbursement from the Debtor's Projected Net Income shall be made on the First Disbursement Date and on each Subsequent Disbursement Date thereafter.

*Voting:* Class 1 is Impaired, and holders of Allowed Unsecured Claims are entitled to vote to accept or reject the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Holders of Class 1 Claims are not expected to be paid in full; however, holders of Class 1 Claims are expected to receive a recovery under the Plan that exceeds the Debtor's liquidation value. Therefore, holders of Allowed Unsecured Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited.

6.2    ***Equity Interests (Class 2)***

*Classification*: Class 2 consists of Existing Equity Interests by James Hoft.

*Treatment*: Class 2 consists of the holder of Existing Equity Interests against the Debtor. James Hoft is the sole member.  The Existing Equity Interest shall continue to be owned by James Hoft after Confirmation and is not impaired.

*Voting:* Class 2 is Unimpaired. Holders of Existing Equity Interests are conclusively deemed to have accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Therefore, holders of Existing Equity Interest are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Equity Interests.

## ARTICLE VII.  MEANS FOR IMPLEMENTATION

7.1     *Sources of Consideration for Plan Disbursements.*

The Plan shall fund disbursements and satisfy applicable Administrative Expense Claims, and Allowed Claims under the Plan using: (a) Cash on hand (Effective Date Payments); and (b) Cash from Projected Net Income (subject to the limitations set forth in the Plan).

The Debtor expects to utilize its cash on hand for payment of the Administrative Expense Claims or any other Effective Date payments.

The Debtor shall commit and disburse its Projected Disposable Income for the Three Year period of the Plan for payment of Allowed Unsecured Claims.

7.2     **Preservation of Causes of Action.**

**Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by order of the Bankruptcy Court, the Debtor reserves any and all Preserved Causes of Action.** No Entity may rely on the absence of a specific reference in the Plan to any Cause of Action against them as any indication that the Debtor will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation Date or Consummation. Prior to the Effective Date, the Debtor, and after the Effective Date, the Debtor shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court except a provided in Section 9.7(g) of the Plan.

7.3     **Corporate Governance; Dissolution.**

On the Effective Date, all Estate Assets shall revest in the Debtor and the Debtor shall continue its business be dissolved without the necessity for any other or further actions to be taken by the Debtor or its member or any payments to be made in connection therewith. All managers of the Debtor shall remain vested with the same authority as existed prior to the Petition Date.

## ARTICLES VIII.  INTENTIONALLY OMITTED

## ARTICLES IX.  DISBURSEMENTS

7.4    *Disbursements.*

(a)    *Delivery of Disbursements*: Disbursements under the Plan shall be made by the Debtor to the holders of Allowed Claims in all Classes at the addresses set forth in the Schedules, unless such addresses are superseded by proofs of claims or transfers of claims filed pursuant to Bankruptcy Rule 3001.

(b)    *Disbursements of Cash*: Any payment by the Debtor pursuant to the terms of the Plan shall be made by check or wire transfer.

(c)    *Date of Disbursements:* Except as otherwise provided in the Plan, any Disbursement and deliveries to be made under the Plan shall be made on the Disbursement Dates or as otherwise determined in accordance with the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

(d)    *Unclaimed Disbursements of Cash*: Any disbursement of cash under the Plan that is unclaimed ninety (90) days after it has been delivered (or attempted to be delivered) shall be deposited with the Clerk of the Bankruptcy Court when the Debtor files the Final Report.

(e)    *Objections to and Resolution of Claims*: Prior to and following the Effective Date, the Debtor shall have the exclusive right to make and to file objections to, or otherwise contest the allowance of all Claims listed and/or filed in this case. Unless an order of the Court specifically provides for a later date, any party filing a proof of claim after the Bar Date shall be not be entitled to treatment as a Creditor with respect to such Claim. Moreover, the Debtor shall have the sole and exclusive authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment Objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and this Plan. Except with respect to Administrative Claims, Objections to Claims must be filed by the Claim Objection Deadline, as may be extended by the Bankruptcy Court from time to time. The Debtor shall retain all rights under 11 U.S.C. §502(d) of the Bankruptcy Code until the Plan is confirmed. Upon confirmation of the Plan, all such rights and interests with respect to Objections to Claims under 11 U.S.C. §502(d) of the Bankruptcy Code shall revest in the Debtor for all purposes. Nothing herein shall adversely effect, divest, nor be deemed a waiver of any right, claim or interest of the Debtor to file and prosecute any objection to claims

14

and/or to seek the disallowance of any Claim filed by any Creditor against the Debtor or the estate, under 11 U.S.C. §502(d) of the Bankruptcy Code prior to and following the Effective Date of the Plan. The Debtor shall be responsible for payment of professional fees and costs associated with prosecuting the Objections to Claims following the Effective Date.

### ARTICLE X.   CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN

10.1   **Conditions Precedent to Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date of the Plan:

    (a)    The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtor, be in full force and effect and not be subject to any stay or injunction; and

    (b)    All actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

10.2   **Waiver of Condition Precedent.**

Except as otherwise provided in the Plan, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.

10.3   **Effect of Failure of a Condition.**

If the conditions listed in Section 10.1 of the Plan are not satisfied or waived in accordance with Section 10.2 of the Plan on or before the first Business Day that is more than sixty (60) days after the date on which the Confirmation Order is entered or by such later date as set forth by the Debtor in a notice filed with the Bankruptcy Court prior to the expiration of such period, the Plan shall be null and void in all respects.

### ARTICLE XI.   EFFECT OF CONFIRMATION OF PLAN

11.1   **Vesting of Property of the Estate.**

The Assets of the Debtor shall consist of all property of the Estate as defined in Section 541 of the Bankruptcy Code, including without limitation, the following: (i) all legal or equitable interests of the Debtor in any and all real or personal property of any nature, together with any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses acquired by the Debtor pre-petition, materials, supplies, furniture, fixtures equipment, and any general tangibles and intangibles, and the proceeds, product, offspring, rents or profits thereof; and (ii) any and all litigation claims, Causes of Action, demands, suits, actions at law or equity and

other legal, beneficial and equitable rights, claims or interests that the Debtor has or may have against any Entity as of the Effective Date.  On the Effective Date, all of the Debtor's Assets shall revest in, and be retained free and clear of all liens, claims, encumbrances and interests of any kind except as provided under the Plan.

      11.2    **Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and the respective interests in the Debtor's Assets and the respective Disbursements and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principals of equitable subordination, Section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to Section 510 of the Bankruptcy Code, the Debtor shall have the right to reclassify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

      11.3    **Binding Effect.**

As of the Effective Date, the Plan shall bind all holders of Claims against and interest in the Debtor's Assets, notwithstanding whether any such holders were (i) Impaired or Unimpaired under the Plan; (ii) presumed to accept or deemed to reject the Plan; (iii) failed to vote to accept or reject the Plan; (iv) voted to reject the Plan; or (v) received any Disbursement under the Plan.

      11.4    **Closing of Chapter 11 Case.**

After the Estate has been fully administered, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

      11.5    **Notice of Effective Date.**

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

      11.6    **Term of Injunctions or Stays.**

Unless otherwise provided in the Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

11.7    **Injunctions and Stays.**

(a)    **Upon entry of the Confirmation Order, all holders of Claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.**

(b)    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or interest in any or all of the Debtor's and/or Debtor's Assets (whether proof of such Claims or interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or any property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor or any property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or any property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor or against any property or interest in property of the Debtor r; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)    **By accepting Disbursements pursuant to the Plan, each holder of an Allowed Claim extinguished, discharged, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented.**

11.8    **Solicitation of Plan.**

As of and subject to the occurrence of the Confirmation Date: (i) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, Sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (ii) the Debtor and each of her professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

## ARTICLE XII.   RETENTION OF JURISDICTION

12.1    **Retention of Jurisdiction.**

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)     to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any administrative or priority Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(b)     to hear and determine settlements and disputes with respect to any Assets, including the Causes of Action;

(c)     to decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to professionals authorized pursuant to the Bankruptcy Code or the Plan;

(d)     to ensure that Disbursements to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan; enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan;

(e)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code) filed, or to be filed, with respect to tax returns of the Debtor for any and all taxable periods ending after the Petition Date through the Effective Date

(f)     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with consummation or enforcement of the Plan;

(g)     to determine any other matters that may arise in connection with or relate to the Plan, t the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan;

(h)     to enter an order or final decree concluding or closing the Chapter 11 Case;

(i)     to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(j)    to determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

(k)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed or deemed executed in connection with the Plan;

(l)    to hear and determine all disputes involving the existence, nature, scope or enforcement of any discharges, injunctions, and releases granted in the Plan;

(m)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(n)    to enforce all orders previously entered by the Bankruptcy Court; and

(o)    to hear any other matter not inconsistent with the Bankruptcy Code.

**12.2   Courts of Competent Jurisdiction.**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIII.  MISCELLANEOUS PROVISIONS

**13.1   Substantial Consummation of the Plan.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**13.2   Plan Modifications.**

Subject to the limitations contained in the Plan the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and  after the entry of the Confirmation Order, the Debtor, as the case may be, may amend or modify the Plan, in accordance with Section 1126(b) of the Bankruptcy Code.

**13.3   Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof.

13.4 **Time**.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.5 **Dates of Actions to Implement the Plan.**

In the event that any payment or act under the Plan is required to be made or performed on a date that is on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

13.6 **Immediate Binding Effect.**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Reorganized Debtor, the holder of Claims, and each of their respective successors and assigns.

13.7 **Deemed Acts.**

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

13.8 **Filing of Final Report.**

Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Case, when all Disputed Claims against the Debtor have become Allowed Claims or have been disallowed by Final Order, and Assets have been liquidated and converted into Cash, and such Cash has been distributed in accordance with the Plan, the Debtor shall file a final accounting with the Bankruptcy Court, together with a final report, and shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

13.9 **Notices**.

All notices, requests, and demands to or upon the Debtor, to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and telephonically confirmed, addressed as follows:

**Bart A. Houston, Esq.**
**Houston Roderman PLLC**
633 South Andrews Avenue
Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 900-2615
Facsimile: (954) 839-9068
bhouston@houstonroderman.com
dschena@houstonroderman.com

Dated:    July 23, 2024

**Respectfully Submitted:**

**Houston Roderman PLLC**                                    **TGP Communications, LLC**
Counsel for the Debtor
633 South Andrews Avenue                                      /s James Holt, Mgr.
Suite 500                                                    By: James Holt
Fort Lauderdale, Florida 33301                               Its: Manager
Telephone: (954) 900-2615
Facsimile: (954) 839-9068
bhouston@houstonroderman.com
dschena@houstonroderman.com

# EXHIBIT "A"

Projection of Disposable Income
Three (3) Year Period

**TGP Communications, LLC**
**Projected Net Income**
For Three Year Period Beginning September 1, 2024

| | Eff. Date | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Year One Total | Year Two Total | Year Three Total | Total Unsecured Payments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Starting Cash: | 200,000.00 | | | | | | | | | | | | | | | | |
| **A. Revenue** | | | | | | | | | | | | | | | | | |
| Operating Revenue | | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 2,940,000.00 | 2,940,000.00 | 2,940,000.00 | |
| **Total Revenue:** | | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 245,000.00 | 2,940,000.00 | 2,940,000.00 | 2,940,000.00 | |
| **B. Expenses** | | | | | | | | | | | | | | | | | |
| Payroll & related expense | | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 82,500.00 | 990,000.00 | 990,000.00 | 990,000.00 | |
| Advertising | | 137.00 | 137.00 | 137.00 | 137.00 | 137.00 | 137.00 | 137.00 | 137.00 | 137.00 | 137.00 | 137.00 | 137.00 | 1,644.00 | 1,644.00 | 1,644.00 | |
| Bank | | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 1,672.00 | 20,064.00 | 20,064.00 | 20,064.00 | |
| Contractors (Writers, etc) | | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 43,368.00 | 520,416.00 | 520,416.00 | 520,416.00 | |
| Insurance | | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 192,000.00 | 192,000.00 | 192,000.00 | |
| Information Technology | | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 67,200.00 | 67,200.00 | 67,200.00 | |
| Office | | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 6,600.00 | 6,600.00 | 6,600.00 | |
| Legal Fees & Expense | | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 300,000.00 | 300,000.00 | 300,000.00 | |
| Accounting Fees | | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 9,500.00 | 114,000.00 | 114,000.00 | 114,000.00 | |
| Travel Expense | | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 49,200.00 | 49,200.00 | 49,200.00 | |
| Telephone/Utilities | | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,000.00 | 3,000.00 | 3,000.00 | |
| Misc. Expenses | | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000.00 | 24,000.00 | 24,000.00 | |
| **Total expenses:** | | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 190,677.00 | 2,288,124.00 | 2,288,124.00 | 2,288,124.00 | |
| **C. Projected Disposable Income** | | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 54,323.00 | 651,876.00 | 651,876.00 | 651,876.00 | |
| **D. Plan Payments** | | | | | | | | | | | | | | | | | |
| General Unsecured Plan Payments | | $54,323 | $54,323 | $54,323 | $54,323 | $54,323 | $54,323 | $54,323 | $54,323 | $54,323 | $54,323 | $54,323 | $54,323 | $651,876 | $651,876 | $651,876 | $1,955,628 |
| **E. Effective Date Payments** | | | | | | | | | | | | | | | | | |
| Administrative Expenses | 85,000.00 | | | | | | | | | | | | | | | | |
| Internal Revenue Service | 16,303.02 | | | | | | | | | | | | | | | | |
| | 101,303.02 | | | | | | | | | | | | | | | | |

# EXHIBIT "B"

**LIQUIDATION ANALYSIS**

**TGP Communications, LLC**
**Liquidation Analysis**
    as of July 2024

|  | Valuation | Adjustment | Liquidation Values |
|---|---|---|---|
| **ASSETS** | | | |
| Cash | 84,000.00 | | 84,000.00 |
| Investment Account (Schwab) | 270,000.00 | | 270,000.00 |
| | | | |
| **Other Current Assets** | | | |
| Loan Receivable - Jim Hoft | 799,860.00 | | 799,860.00 |
| Loan Receivable - Joe Hoft | 21,000.00 | (21,000.00) [1] | - |
| Due from Justice League | 150,000.00 | (150,000.00) [2] | - |
| Misc Accounts | 40,000.00 | | 40,000.00 |
| Intellectual Property | - | | - |
| **Fixed Assets** | | | |
| Vehicle (Porsche) | 88,000.00 | (52,000.00) [3] | 36,000.00 |
| | | | - |
| | | | - |
| | 1,452,860.00 | (223,000.00) | **1,229,860.00** |

| **LIQUIDATION EXPENSE** | |
|---|---|
| Chapter 7 Trustee | 36,895.80 |
| Admin Expenses | 100,000.00 |
| | **136,895.80** |

| | |
|---|---|
| | **1,092,964.20** |

[1]. Likley uncollectible. No source documents or other evidence of indebtedness or initial advance of funds.

[2]. Likely uncollectible.  Justice League is largely funded by TGP and advances other TGP causes and projects.
Liquidation of TGP would eliminate funding and donations would cease if there are no additional projects to pursue

[3]. Accumulated depreciation.