UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| TGP Communications, LLC. | Case No. 24-13938 (MAM) |
| Debtor. | |

OBJECTION OF
RUBY FREEMAN AND
WANDREA' ARSHAYE MOSS TO
THE EXPEDITED MOTION PURSUANT
TO FED. R. BANKR. P. 8007 FOR ENTRY OF AN
ORDER STAYING THE MEMORANDUM OPINION AND
ORDER GRANTING MOTION TO DISMISS CHAPTER 11 CASE UNDER
SECTIONS 1112(B) AND 305(A) OF THE BANKRUPTCY CODE (ECF NO. 95)
AND/OR CONTINUING AUTOMATIC STAY PENDING CONCLUSION OF APPEAL

Ruby Freeman and Wandrea' ArShaye "Shaye" Moss (together, the "Freeman Plaintiffs"), as creditors of TGP Communications, LLC (the "Debtor" or "TGP"), by and through their undersigned counsel, respectfully file this objection (the "Objection") to TGP's expedited motion [ECF No. 110] (the "Motion") to stay the Court's *Memorandum Opinion and Order Granting Motion to Dismiss Chapter 11 Case Under Sections 1112(b) and 305(a) of the Bankruptcy Code and Cancelling Hearing* [ECF No. 95] (the "Dismissal Opinion") which granted the Freeman Plaintiffs' motion to dismiss the Debtor's chapter 11 case [ECF No. 39] (the "Motion to Dismiss").[1]

## PRELIMINARY STATEMENT

1. As detailed in the Motion to Dismiss, TGP and its owner Jim Hoft have spent the past two-and-a-half years implementing a series of delay tactics in the Missouri Litigation. The goal of these tactics is simple: frustrate the Freeman Plaintiffs' efforts to hold TGP, Jim Hoft, and Joe Hoft accountable for statements made in the aftermath of the 2020 presidential election. For several months, TGP's chapter 11 case furthered this objective by staying the Missouri Litigation. However, following entry of the Dismissal Opinion, the Missouri Litigation is once again moving forward. Now, with depositions scheduled later this month for Jim Hoft, TGP has filed its "emergency" Motion asking the Court to stay the effectiveness of its own Dismissal Opinion. The Motion is just the latest attempt by TGP and Jim Hoft to game the system and delay the Missouri Litigation. On the merits, the Motion fails to adequately demonstrate why this extraordinary relief is warranted—which is hardly surprising as there is no objective basis for doing so. The Court should see through TGP's latest thinly veiled delay tactic and deny the Motion.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

**OBJECTION**

2. "A motion for stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant." *In re Lickman*, 301 B.R. 739, 742 (Bankr. M.D. Fla. 2003). "In determining whether to grant a stay pending appeal, courts should determine whether a movant has adequately demonstrated each of four necessary factors: (i) that the movant is likely to prevail on the merits of its appeal; (ii) that the movant will suffer irreparable injury if a stay or other injunctive relief is not granted; (iii) that other parties will suffer no substantial harm if a stay or other injunctive relief is granted; and (iv) in circumstances where the public interest is implicated, that the issuance of a stay or other injunctive relief will serve, rather than disserve, such public interest." *In re Sanders*, 544 B.R. 463, 466–67 (Bankr. S.D. Fla. 2016). Here, the Motion satisfies none of these four necessary factors, and the totality of TGP's argument can hardly be described as the "substantial showing" necessary to justify this extraordinary relief. Accordingly, the Motion should be denied.

**A. TGP Has Not Shown That It Is Likely To Succeed On The Merits Of Its Appeal**

3. "Discretionary rulings made pursuant to the Bankruptcy Code, ***such as the dismissal of a bankruptcy case***, are reviewed under an abuse of discretion standard" on appeal. *In re State St. Houses, Inc.*, 305 B.R. 738, 741 (S.D. Fla. 2003), *aff'd*, 356 F.3d 1345 (11th Cir. 2004) (emphasis added). Here, the Motion simply ignores the heightened standard on appeal and fails to explain why any of the "issues" identified are abuses of discretion likely to result in the District Court overturning the Dismissal Opinion. This failure alone provides sufficient grounds for denying the Motion. *Aristyld v. City of Lauderhill*, No. 12-60110-CIV, 2013 WL 12136514, at *1 (S.D. Fla. July 12, 2013) (noting a motion that "fails to address, much less satisfy, the factors that must be considered in issuing ... a stay" may be denied for that reason alone); *In re Sanders*,

544 B.R. 463, 467 (Bankr. S.D. Fla. 2016) (denying motion where plaintiff failed to show "how or why these points are likely to cause" the order on appeal to be overturned).

4. The single issue that TGP identifies as relevant to its appeal is the Dismissal Opinion's consideration of the Debtor's *Chapter 11 Subchapter V Plan of Reorganization* [ECF No. 93] (the "Plan"), which was filed approximately one month after the hearing on the Motion to Dismiss. This argument is facially incorrect, as it is well-settled law that the Court could take judicial notice of the Plan. *AASI Creditor Liquidating Tr. v. Raymond James & Assocs. (In re All Am. Semiconductor, Inc.)*, 427 B.R. 559, 565 (Bankr. S.D. Fla. 2010) ("Courts may take judicial notice of public records including proceedings in its own docket."). And even if TGP's argument had merit (which is does not), the Motion does not take the step necessary to justify the relief it seeks: explaining how reconsideration of the purportedly "erroneous" conclusions drawn by the Court after reviewing the Plan—specifically, the implications of the Plan's failure to reference the media insurance policy and Schwab accounts—will result in a successful appeal. Indeed, the Dismissal Opinion independently focused on numerous facts indicative of a bad faith filing that had nothing to do with the contents of the Plan, including facts showing TGP's lack of financial distress, the lack of evidence in the record as to why TGP needed to reorganize, and TGP's desire to game the subchapter V process by protecting existing equity at the expense of creditors.

**B. TGP Will Not Be Irreparably Harmed Absent A Stay**

5. To argue the existence of irreparable harm, TGP makes the unsupported assertion that further depletion of its media liability insurance policy "will in all likelihood result in the cessation of [its] business." Motion at 3. This argument misses the mark for several reasons. First, as a matter of law, the incurrence of additional litigation expense does not constitute irreparable harm suffered by TGP. *Arnold v. Commodity Futures Trading Comm'n*, 987 F. Supp. 1463, 1468

3

(S.D. Fla. 1997) ("[i]t is well settled that '[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'") (quoting *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)). Second, as this Court has already noted, TGP's predictions about the effect of either litigation on its ability to continue operations are entirely speculative. Dismissal Opinion at *19 ("That possibility is the driving force behind TGP's bankruptcy filing, but it remains to be seen whether TGP will ever suffer cash flow insolvency."). Finally, as factual matter, there is no threat of TGP exhausting the media liability insurance policy during the pendency of the appeal of the Dismissal Opinion. Following entry of the Dismissal Opinion, there was approximately $1.3 million in unused coverage. *Joint Stipulation of Uncontested Facts* [ECF No. 80] at 6. That unused coverage provides more than sufficient runway to ensure the appeal of the Dismissal Opinion will be fully briefed and ripe for decision long before trial will occur in either the Missouri Litigation (scheduled for March 2025) or Colorado Litigation (no trial date set).

### C.  A Stay Would Substantially Injure The Freeman Plaintiffs

6. TGP cannot demonstrate that a stay of the Dismissal Opinion would not harm other parties. As detailed in the Motion to Dismiss, the Freeman Plaintiffs have endured numerous litigation delay tactics in their lawsuit against TGP and the Hoft brothers. If the Motion is granted, it will reimpose a stay of the Missouri Litigation, depriving the Freeman Plaintiffs of the ability to finalize fact discovery in the Missouri Litigation in a timely manner as the appeal runs its course. Moreover, granting the Motion would effectively reward Jim Hoft and TGP's effort to postpone his deposition in the Missouri Litigation.

7. TGP's contention that the Freeman Plaintiffs should be indifferent as to whether their claim is adjudicated in the forum of their choosing or Bankruptcy Court is unsupported and illogical. *See* Motion at 4. This Court has already observed the obvious reasons why the Freeman

Plaintiffs do not want to have their claim adjudicated in bankruptcy court: the proposed plan in bankruptcy would be inferior to their expected recovery outside of bankruptcy. *See* Dismissal Opinion at 24-26. Moreover, as the Dismissal Opinion also recognizes, the Freeman Plaintiffs' interest goes beyond monetary recovery; "they want their day in court to present their state law claims," not just the ability to seek a "capped" payout under the terms of TGP's plan. *Id.* at 25. At bottom, TGP's arguments merely reflect a desire to have the Dismissal Opinion overturned, but do not amount to evidence of non-injury from a stay.

### D. A Stay Will Not Serve The Public Interest

8. Finally, TGP's discussion of the supposedly "not so substantial" public interest concedes that this factor does not cut in favor of a stay. *See* Motion at 4. In fact, denying the Motion is strongly in the public interest. The Dismissal Opinion notes that "[p]ublic policy" is a "very large" impediment to the continuation of this bankruptcy proceeding and that parties should not view bankruptcy as a "[g]et out of jail free card for potential personal injury torts." Dismissal Opinion at 24. Granting the Motion would encourage bad faith actors similar to TGP—many of whom may also be looking to use the bankruptcy system as a delay mechanism—to file for chapter 11 protection in hopes of obtaining tactical litigation advantages. Accordingly, public policy supports this Court's Dismissal Opinion and disfavors imposing a stay pending appeal. Denial of the Motion would rightly underscore that chapter 11 is not a safe haven for bad faith actors looking to obtain litigation advantages over their creditors.

## CONCLUSION

9. TGP has failed to carry its burden to show that each of the four factors favor a stay pending appeal. In fact, each factor weighs against granting a stay. Accordingly, the Motion should be denied.

Dated:  September 6, 2024

By:  */s/ David A. Blansky*

| | |
|---|---|
| David A. Blansky | Aaron E. Nathan (admitted *pro hac vice*) |
| Florida Bar No. 1033002 | James H. Burbage (admitted *pro hac vice*) |
| Michael P. Dunn | WILLKIE FARR & GALLAGHER LLP |
| Florida Bar No. 100705 | 787 Seventh Avenue |
| DUNN LAW, P.A. | New York, NY 10019 |
| 66 West Flager Street, Suite 400 | Telephone: (212) 728-8000 |
| Miami, FL 33130 | Facsimile: (212) 728-8111 |
| Telephone: (786) 433-3866 | anathan@willkie.com |
| Facsimile: (786) 260-0269 | jburbage@willkie.com |
| dblansky@dunnlawpa.com | |
| michael.dunn@dunnlawpa.com | -and- |
| | |
| -and- | Michael J. Gottlieb (admitted *pro hac vice*) |
| | Meryl C. Governski (admitted *pro hac vice*) |
| Rachel Goodman (admitted *pro hac vice*) | WILLKIE FARR & GALLAGHER LLP |
| Brittany Williams (admitted *pro hac vice*) | 1875 K Street NW |
| UNITED TO PROTECT DEMOCRACY | Washington, DC 20006 |
| 82 Nassau Street, #601 | mgottlieb@willkie.com |
| New York, NY 10038 | mgovernski@willkie.com |
| Telephone: (202) 579-4582 | |
| rachel.goodman@protectdemocracy.org | |
| brittany.williams@protectdemocracy.org | |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF), on this 6th day of September, 2024 upon counsel for the Debtor and registered users in this case.

By:  */s/ David A. Blansky*
David A. Blansky, Esq.
Florida Bar No. 1033002